[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12221
Non-Argument Calendar
_____

D.C. Docket No. 6:11-cv-01665-KRS

DEREK SAUCIER,

Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 15, 2014)

Before PRYOR, MARTIN, and JORDAN, Circuit Judges.

PER CURIAM:

Derek Saucier seeks review of the Social Security Administration's denial of his application for disability insurance benefits, 42 U.S.C. § 405(g), and supplemental security income, 42 U.S.C. § 1383(c)(3). The administrative law judge ("ALJ") determined that Mr. Saucier suffered from several severe impairments, noting his history of Tourette's Syndrome, attention deficit-hyperactivity disorder, obsessive-compulsive disorder, and benzodiazepine withdrawal syndrome. The ALJ further acknowledged that Mr. Saucier had degenerative disc disease of the lumbar spine, depressive disorder, and somatization disorder. Nonetheless, the ALJ determined that Mr. Saucier was not disabled because these impairments did not meet or equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 *et al*. The district court affirmed, and this appeal followed.

We review "de novo the district court's decision on whether substantial evidence supports the ALJ's decision." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Thus, "the question is not whether substantial evidence supports a finding made by the district court but whether substantial evidence supports a finding made by the [ALJ]." *Graham v. Bowen*, 790 F.2d 1572, 1575 (11th Cir. 1986). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."

2

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks omitted).

On appeal, Mr. Saucier, through counsel, argues that the ALJ erred in discounting Dr. Patrick Gorman's somatization diagnosis and opinion that Mr. Saucier had extreme functional limitations in satisfaction of Listing 12.07. According to Mr. Saucier, had the ALJ properly credited Dr. Gorman's opinion, the testimony of Jane Beougher, a vocational expert, would have established that there was no work that Mr. Saucier could perform in the national economy. After reviewing the record and the parties' briefs, we hold that substantial evidence supports the ALJ's determination that Mr. Saucier was not entitled to disability insurance benefits and supplemental security income.

In order to demonstrate the required level of severity for somatoform disorders under Listing 12.07, the claimant must satisfy both subparagraphs to the listing. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.07. As relevant here, subparagraph (B) requires the disorder to result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of an extended duration. *Id.*[1]

---

[1] A "marked" limitation means "more than moderate but less than extreme." 20 C.F.R.

3

Mr. Saucier argues that Dr. Gorman's diagnosis of somatization disorder and opinions regarding Mr. Saucier's functional impairments conclusively established that Mr. Saucier satisfied all the requirements of Listing 12.07. But a claimant cannot meet the criteria of a listing based solely on a diagnosis. *See* 20 C.F.R. § 404.1525(d). Instead, issues regarding whether the claimant is "disabled" or "unable to work" are reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1). Although the Commissioner will "consider opinions from medical sources on issues such as whether [the claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments in appendix 1, . . . the final responsibility for deciding these issues is reserved to the Commissioner." *Id.* § 404.1527(d)(2). Accordingly, the ALJ correctly declined to "give any special significance" to Dr. Gorman's opinion on these issues. *Id.* § 404.1527(d)(3).

Moreover, contrary to Mr. Saucier's argument, the ALJ credited Dr. Gorman's diagnosis, finding that Mr. Saucier suffered from somatization disorder. *See* D.E. 17 at 25.[2] The ALJ, however, ultimately determined that Mr. Saucier failed to demonstrate the required level of severity for somatoform disorders under Listing 12.07. *Id.* at 26. In so doing, the ALJ considered, but

---

Pt. 404, Subpt. P, App. 1, § 12.00(D).

[2] Unless otherwise noted, all pagination refers to the page number assigned on PACER.

4

rejected, Dr. Gorman's opinion that Mr. Saucier suffered from extreme functional impairments in satisfaction of the requirements of subparagraph (B) of Listing 12.07.

Mr. Saucier says that this was error because it failed to accord Dr. Gorman's opinion the substantial weight to which it was entitled "due to the frequency of [Dr. Gorman's] contact with Claimant." Appellant's Br. at 26. As Mr. Saucier correctly points out, absent good cause, the ALJ must give the medical opinions of treating physicians "substantial or considerable weight." *Winschel*, 631 F.3d at 1179 (internal quotation marks omitted). Mr. Saucier's argument, however, fails to contend with the ALJ's determination that Dr. Gorman did not qualify as a treating physician. *See* D.E. 17 at 32. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides, or has provided the claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with the claimant. *See* 20 C.F.R. § 416.902. Mr. Saucier does not contest that he was referred to Dr. Gorman by his attorney, *see* D.E. 17-2 at 79, and the Social Security Administration does not "consider an acceptable medical source to be [a] treating source if [the claimant's] relationship with the source is not based on . . . medical need for treatment or evaluation, but solely on [the] need to obtain a report in support of [the] claim for disability." 20 C.F.R. §

404.1502 ("In such a case, we will consider the acceptable medical source to be a nontreating source.").

In any event, even assuming that Dr. Gorman was a treating source, the ALJ had good cause to not give his opinion considerable weight. Good cause exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhardt*, 357 F.3d 1232, 1241 (11th Cir. 2004). Here, Dr. Gorman's opinions were not only inconsistent with evidence concerning Mr. Saucier's activities and other medical opinions, but also Dr. Gorman's own observations.

Substantial evidence supports the ALJ's finding that Mr. Saucier had only moderate restrictions in (1) activities of daily living; (2) maintaining social functioning; and (3) concentration, persistence, or pace. For example, Mr. Saucier indicated in his functional report that "he has no problems maintaining personal care, preparing simple meals, doing laundry, using a riding lawn mower, and managing finances." D.E. 17 at 27. *See also id.* at 118-122. Dr. Pamela Green, a state agency consultant, concluded that Mr. Saucier had mild restrictions in activities of daily life, maintaining social functioning, and concentration, persistence, or pace; she found no episodes of decompensation of extended duration. *See* D.E. 17-2 at 43. Dr. Ada Ramirez, the consultative examining

6

physician, noted that Mr. Saucier's "verbal and communication skills were adequate and his eye contact was fair"; although his "speech was soft and slow," it was "lucid and goal directed."  D.E. 17-2 at 22.  And these observations were consistent with the ALJ's own observations of Mr. Saucier's testimony at the hearing.  D.E. 17 at 27 ("Claimant's testimony at the hearing was presented in a very soft voice and was halting, but he responded to questions, answering them relevantly and adequately.").  Finally, the ALJ properly discounted Dr. Gorman's opinion that Mr. Saucier experienced continual episodes of decompensation, because there was no record evidence of ongoing mental health treatment or extended periods of decompensation requiring supporting care or mental health hospitalization.  Thus, the ALJ correctly accorded little weight to Dr. Gorman's opinion that Mr. Saucier's functional restrictions were extreme.

Furthermore, substantial evidence supported the ALJ's decision to discount Dr. Gorman's opinions because they were inconsistent with Dr. Gorman's own observations.  Following an examination of Mr. Saucier, Dr. Gorman observed that (1) Mr. Saucier's "speech was within normal limits for rate, rhythm, and volume"; (2) his "attention and concentration appeared appropriate"; and (3) he "understood all task questions and instructions and did not require repetition or clarification." D.E. 17-2 at 76.  Moreover, Dr. Gorman noted that Mr. Saucier "displayed poor effort on numerous tasks of response bias that were presented to him during [his

neuropsychological] evaluation," performing "worse than patients with severe dementia who required hospitalization as well as young children." *Id.* at 79. For example, after testing on verbal memory functioning, Dr. Gorman noted that it was "highly unlikely that [Mr. Saucier] would be able to obtain [his low test] score without knowing the correct answer and purposely choosing the wrong one." *Id.* at 78. "[G]iven [Mr. Saucier's] poor effort on the tasks presented to him combined with highly variable performance," Dr. Gorman concluded that "the results obtained on measures of intellectual functioning, executive function, attention and concentration and learning and memory [were] likely an inaccurate underestimate of [Mr. Saucier's] current functioning." *Id.* at 79. In light of these more detailed findings, the ALJ properly declined to credit Dr. Gorman's conclusory opinions that Mr. Saucier suffered from extreme limitations in daily living, social functioning, and concentration, persistence or pace. *See* D.E. 17-2 at 63 (form evaluation by Dr. Gorman indicating that Mr. Saucier suffered from "extreme" functional limitation).

In sum, substantial evidence supports the ALJ's decision not to adopt Dr. Gorman's conclusions regarding the severity of Mr. Saucier's functional limitations. Accordingly, the ALJ properly did not credit the portion of Ms. Beougher's testimony that required her to accept as true Dr. Gorman's opinions on Mr. Saucier's limitations.

For the above stated reasons, and upon review of the record and consideration of the parties' briefs, we affirm.

**AFFIRMED.**